MINPECO S.A., Plaintiff,

v.

CONTICOMMODITY SERVICES, INC., Conticapital Management, Inc., Conticapital Limited, Norton Waltuch, Nelson Bunker Hunt, Lamar Hunt, William Herbert Hunt, International Metals Investment Co., Ltd., Sheik Mohammed Aboud Al-Amoudi, Sheik Ali Bin Mussalem, Naji Robert Nahas, Gilian Financial, Acli International Commodity Services, Inc., Banque Populaire Suisse, Advicorp Advisory and Financial Corporation, S.A., Mahmoud Fustok, Faisal Bin Abdullah, Merrill Lynch, Pierce, Fenner & Smith, Inc., Bache Halsey Stuart Shields, Inc., E.F. Hutton & Company, Inc., Commodity Exchange, Inc., and The Board of Trade of the City of Chicago, Defendants.

No. 81 Civ. 7619 (MEL).

United States District Court, S.D. New York.

Oct. 26, 1982.

Cole & Corette, P.C., Washington, D.C., for plaintiff; Theodore Sonde, John E. Corette, III, D. McCarty Thornton, Deborah M. House, Susan Bierman, Washington, D.C., Grand & Ostrow, Paul R. Grand, New York City, of counsel.

Hughes, Hubbard & Reed, New York City, Shank, Irwin, Conant & Williamson, Dallas, Tex., for defendants Nelson Bunker Hunt, William Herbert Hunt, and Lamar Hunt.

Arnold & Porter, Washington, D.C., Gilbert, Segall & Young, New York City, for defendant Banque Populaire Suisse.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants Conticommodity Services, Inc., Conticapital Management, Inc., Conticapital Ltd., and Norton Waltuch.

Sullivan & Cromwell, New York City, for defendant Bache Halsey Stuart Shields Incorporated.

Curtis, Mallet-Prevost, Colt & Mosle, New York City, for defendant Mahmoud Fustok.

LASKER, District Judge.

The defendants listed in the margin[1] move pursuant to Fed.R.Civ.Pr. 42(b) for an order directing a separate trial on the issue of loss. Defendants contend that Minpeco S.A. ("Minpeco"), is an "arm" of the Peruvian government, and therefore cannot recover damages for losses caused by a rise in the price of silver, because the Peruvian government as a whole benefitted from the rise in price. Defendants assert that the question whether Peru gained or lost as a result of the price increases can be adjudicated expeditiously, and that it would therefore serve the interests of justice to conduct that inquiry before determining defendants' liability.

Minpeco answers that it is not an "arm" of the Peruvian government, but rather a separate and distinct corporate entity, albeit wholly owned by Peru. Moreover, Minpeco asserts that defendants have not alleged any fraud, manipulation or other inequitable conduct which would provide a basis for disregarding its separate corporate existence. Finally, Minpeco argues that the question of the financial impact on Peru of the rise and fall in the silver market is by no means a limited one, and would require substantial and complicated factual inquiries.

Although defendants refer to Minpeco at various times as an "arm" or "agency" of Peru, they offer no factual basis for disputing Minpeco's assertion that it is a corporation, a separate legal entity, organized validly and in good faith, and not immediately prior to the institution of this lawsuit, but in 1974. Thus, the argument that "[a]n antitrust claimant must show injury," (Defendants' Memorandum at 12), while correct, somewhat misstates the issue. The question presented by the instant motion is not whether Minpeco was injured—it alleges that it suffered actual losses of $82.5 million—but whether a gain enjoyed by *another entity,* the government of Peru, should be *offset* against Minpeco's loss.

---

1. ContiCommodity Services, Inc., ContiCapital Management, Inc., ContiCapital Ltd., Norton Waltuch, Nelson Bunker Hunt, Lamar Hunt, William Herbert Hunt, Banque Populaire Suisse, Mahmoud Fustok, and Bache Halsey Stuart Shields Incorporated.

■ Moreover, even in economic terms, defendants' argument is unpersuasive. Defendants contend that Peru did not lose any money due to the rise in silver prices, because the amounts that it lost on the short sale contracts were set off by their sales of silver at the higher prices. However, the fact that a plaintiff comes out even does not necessarily demonstrate that it has not been injured: it is possible that, but for defendants' alleged activities, Peru would have been in an even better position.

■ In arguing that Minpeco's corporate existence should be disregarded, defendants rely primarily on *Bangor Punta Operations, Inc. v. Bangor & Oroostook Railroad*, 417 U.S. 703, 94 S.Ct. 2578, 41 L.Ed.2d 418 (1974). Defendants' reliance on *Bangor Punta* is misplaced. Contrary to defendants' contention, *Bangor Punta* did not purport to effectuate a major expansion of the doctrine of piercing the corporate veil: to the contrary, it merely approved the application to the case in question of the *"Home Fire* principle,"[2] *id.* at 710–711, 94 S.Ct. at 2583, the "settled principle of equity that a shareholder may not complain of facts of corporate mismanagement if he acquired his shares from those who participated or acquiesced in the allegedly wrongful transactions." *Id.* The "Home Fire" principle does not relate to the present action.

Defendants argue that *Bangor Punta* and other, similar cases hold that:

"[Y]ou cannot manipulate the corporate form to create one loss when there isn't any. These decisions are really illustrations of the broader method of antitrust analysis of looking through form to economic substance to achieve the purposes of the antitrust laws."

(Transcript of Oral Argument of October 8, 1982, at 5).

This argument fails for two reasons. First, there is no evidence of record that indicates that either Minpeco or Peru "manipulated the corporate form" to "create" a loss. Second, at least on the present record, we find no inconsistency between form and economic substance.

■ Moreover, the prohibition against piercing of the corporate veil in ordinary cases is particularly appropriate in cases concerning foreign government-owned corporations, as to whom the Court of Appeals has recently ruled in an analogous, although not identical case:

"[W]e decline to hold that trading corporation wholly owned by a foreign government, but created and operated as a separate juridical entity, is an alter ego of that government for the purpose of recovery for wrongs of the government totally unrelated to the operations, conduct, or authority of the instrumentality."

*Banco Para El Comercio v. First Natl. City Bank*, 658 F.2d 913, 920 (2d Cir. 1981), *cert. granted* —— U.S. ——, 103 S.Ct. 253, 74 L.Ed.2d 198 (1982). As we see it, even if a set-off might be allowed under conditions of unity, the silver holdings of the Peruvian government are "totally unrelated to the operations, conduct, or authority" of Minpeco.

■ Under ordinary circumstances, the integrity of the corporate form is respected unless it has been abused; that is, unless the corporate form has been used "to perpetrate a fraud" or unless the corporation's owners "have so dominated or disregarded [the corporation's] corporate form that [the corporation] primarily transacted [the owner's] business rather than its own corporate business." *Kirno Hill Corp. v. Holt*, 618 F.2d 982, 985 (2d Cir. 1980). Defendants do not indicate that any of those circumstances are presented by the instant action. Defendants are free to attempt to develop and put before the Court evidence, if any, that Peru and Minpeco have engaged in conduct which justify disregarding Minpeco's corporate existence. However, no such evidence has been offered on the present record.

Finally, while it may be less complicated to adjudicate the loss questions than the questions of liability, the suggested "loss" trial would not necessarily be a simple one. For example, it appears that Minpeco mar-

2. The *"Home Fire* principle" takes its name from Dean (then Commissioner) Roscoe Pound's decision in *Home Fire Insurance Co. v. Barber*, 67 Neb. 644, 93 N.W. 1024 (1903).

kets silver for forty privately-owned mines, as well as for two mines owned by the government. This suggests that complicated questions of allocation of loss might arise in determining what proper offsets should be allowed against Minpeco's losses. (It also suggests, incidentally, that Minpeco's losses could have been substantially greater than the government's gains.)

Much as the Court would like to dispose of a case of this complexity on an expedited basis, we cannot agree that, on this record, defendants' suggested method is appropriate.

The motion for a separate trial is denied.

It is so ordered.