The SOUTHLAND
CORPORATION, Plaintiff,

v.

Jameel BUKHARI, Defendant.

Jameel BUKHARI, Plaintiff,

v.

The SOUTHLAND
CORPORATION, Defendant.

Nos. CV 90–1378, CV 90–1464.

United States District Court,
E.D. New York.

Sept. 19, 1990.

Borker & Sussman, New York City, for plaintiff, Southland Corp.

Mullen & Iannarone, P.C., Smithtown, N.Y. (Jeffrey B. Hulse, of counsel), for Jameel Bukhari.

## MEMORANDUM OF DECISION AND ORDER

MISHLER, District Judge.

These actions (the *"Bukhari"* action) are based on substantially the same franchise and security agreements that form the basis of CV 90–1375 (Mir/Ali franchisees), CV 90–1377 (Nasim franchisee), and CV 90–1379 (Mir/Mir franchisees), and the actions related thereto which were removed from New York State Supreme Court. The court issues a separate memorandum of decision and order in those actions, making findings of fact and conclusions of law. 748 F.Supp. 969. To the extent that the findings of fact and conclusions of law made in that memorandum of decision are pertinent to the issues raised in the *Bukhari* action they are incorporated into this memorandum of decision.

Jameel Bukhari ("Bukhari") opened his franchised store on December 16, 1988. In March 1989, he traveled to Pakistan to attend his father's funeral and handle matters related to his father's estate, returning to the United States on May 31, 1989. During this period, Asim Nasim ("Nasim") oversaw the day-to-day operations of Bukhari's store on Bukhari's behalf. When Nasim was not in attendance, Ahmad Raza (a/k/a "Tony"), employed by Bukhari as the manager of the store and authorized to sign cash reports, exercised his authority in the operation of the store. When Bukhari returned to this country on May 31, 1989, he was unable to give his full attention to the business at the store. From that day until April 24, 1990, he visited the store at various hours a few days in each week. The management of the store was shared by Tony, Nasim, and Nasim's father, Nasim Hussain, in addition to Bukhari.

Bukhari's answer to the claim of substantial breach of the franchise agreement through the money order scam is that he was unaware of any such scheme (Bukhari Post-trial Memorandum at p. 6) and such criminal acts of an employee cannot be the basis for termination of his rights under the franchise agreement.

During the period March 1, 1989 to April 17, 1990, Bukhari's store issued yet failed to record about 100 money orders totalling about $14,700. Many of the money orders were payable to vendors; one was payable to Ahmad Raza (11/22/89 in the amount of $108).[1] (*See* Ex. 44).

The franchise agreement requires that Bukhari "will actively and substantially participate in the operation of the Store and will have full managerial authority and responsibility for the operation of the Store." (¶ 33). He is specifically charged with "the conduct of FRANCHISEE'S agents and employees, including, but not limited to, the day-to-day operations of the Store and all Store employees." (¶ 21).

The liability of a principal for the fraud committed by agents and employees acting within the scope of their authority was defined in *American Society of Mechanical Engineers v. Hydrolevel Corp.*, 456 U.S. 556, 565–66, 102 S.Ct. 1935, 1942, 72 L.Ed.2d 330 (1982) as follows:

> [U]nder general rules of agency law, principals are liable when their agents act with apparent authority and commit torts.... [footnote omitted]. For instance, a principal is liable for an agent's fraud though the agent acts solely to benefit himself, if the agent acts with apparent authority.

*See Maritime Ventures Int'l v. Caribbean Trading & Fidelity*, 689 F.Supp. 1340, 1355 (S.D.N.Y.1988).

Bukhari placed Nasim, Nasim Hussain and Ahmad Raza in an apparently authorized position, over a long period of time, presenting the opportunity to commit fraud upon Southland. The agents and employ-

---

1. Ahmad Raza, "Tony," was still in Bukhari's employ at the time of the hearing. He was not called as a witness.

ees committing the fraud were acting within the scope of such authority. *General Overseas Films, Ltd. v. Robin Int'l, Inc.,* 542 F.Supp. 684, 688–90 (S.D.N.Y.1982), *aff'd,* 718 F.2d 1085 (2d Cir.1983); Restatement (Second) of Agency § 261 (1958).[2]

In *L.J. Dreiling Motor Co. v. Peugeot Motors of America, Inc.,* 605 F.Supp. 597 (D.Col.1985), *aff'd in relevant part,* 850 F.2d 1373, 1378 (10th Cir.1988), Dreiling, a Peugot franchisee, brought an action for damages claiming a wrongful termination of its dealership franchise. Peugot moved for summary judgment on the ground that it had the right to terminate the franchise based on the fraudulent warranty claims submitted to it. Dreiling responded to the motion by showing that the claims were submitted by its service manager, one Lou Bartlett, and that it was unaware of the fraud perpetrated on Peugot. In granting summary judgment, the court cited section 261 of the Restatement (Second) of Agency[3] and held:

> It cannot be disputed that Dreiling, by employing Bartlett as service manager, put him in a position where he could submit fraudulent warranty claims while apparently acting within his own authority.

*Id.* at 611. *See also Hatton v. Quad Realty Corp.,* 100 A.D.2d 609, 473 N.Y.S.2d 827, 829 (2d Dep't 1984) (following section 261).

In accordance with the findings of fact and conclusions of law made in the court's memorandum of decision in the Mir/Ali, Nasim, and Mir/Mir actions, to the extent they are pertinent to the issues raised in this action, Southland's motion herein for order of seizure is granted, with the same provision for stay as contained in that memorandum of decision. Bukhari's motion is denied, and it is

SO ORDERED.

---

**2.** Section 261 of the Restatement (Second) of Agency (1958) states:

> A principal who puts a servant or other agent in a position which enables the agent, while apparently acting within his authority, to commit a fraud upon a third persons is subject to liability to such third persons for the fraud.

