KIRNO HILL CORPORATION, Plaintiff-Appellee-Appellant,

v.

Thomas J. HOLT, Defendant-Appellant,

Holt Hauling & Warehousing Systems, Inc., Defendant,

and

Holt Marine Terminal, Inc., Defendant-Appellee.

Nos. 621, 720, Dockets 79–7694, 79–7695.

United States Court of Appeals, Second Circuit.

Argued Jan. 9, 1980.

Decided March 31, 1980.

Donald B. Allen, New York City (Cichanowicz & Callan, Michael J. Carcich, New York City, of counsel), for plaintiff-appellee-appellant Kirno Hill Corporation.

John H. Gross, New York City (Anderson Russell Kill & Olick, P. C., Nicholas J. Zoogman, New York City, of counsel), for defendant-appellee Thomas J. Holt.

Before LUMBARD, MOORE and MESKILL, Circuit Judges.

PER CURIAM:

Thomas Holt and Kirno Hill Corporation both appeal from a judgment entered by Judge Weinfeld in the Southern District of New York on August 10, 1979. Holt claims

that the district court erred in holding him personally liable to Kirno Hill, a shipowner, for charter-hire payments and other expenses. Kirno Hill claims that the district court erred in holding not liable for those payments and expenses two corporations that Holt controls: Holt Hauling & Warehousing Systems, Inc. (Holt Hauling) and Holt Marine Terminal, Inc. (Holt Marine). We conclude that the district court erred only as to the liability of Holt. We therefore reverse that portion of the judgment which holds Holt personally liable, and we affirm the judgment as to Holt Hauling and Holt Marine.

On August 22, 1975, Kirno Hill signed a charter party with Waterside Ocean Navigation, Inc., a New York corporation (hereinafter Waterside-New York), for the time charter of the M. S. Selene, one of Kirno Hill's vessels; and on September 9, Kirno Hill delivered the Selene to Waterside-New York for a voyage from the Gulf of Mexico to the Red Sea and Persian Gulf. The charter-hire payment that was due on December 9, 1975, was not made, however, and on December 29, the Selene's representative, Lamorte, Burns & Co., demanded payment from Waterside-New York. Jon Pendleton, Waterside-New York's president, replied on January 13, 1976, that Waterside-New York had not made any of the past charter-hire payments and would not make the defaulted payment because it had acted, when negotiating and executing the charter party, as the agent of another Waterside Ocean Navigation, Inc., this one a Pennsylvania corporation (hereinafter Waterside-Pennsylvania) whose sole owner is Holt. Pendleton's reply concluded, "It is suggested that the owner of the M. V. [sic] Selene look to MR. T. J. HOLT and his various companies for monies to complete the voyage entered into under the above referenced Charter Party."

On January 23, 1976, Kirno Hill filed a complaint against Holt, Holt Hauling, and Holt Marine, seeking unpaid charter-hire payments and the expenses it incurred in completing the Selene's voyage and discharging her cargo.[1] Kirno Hill sought to prove that Holt was the undisclosed principal of Waterside-New York and was therefore liable under the principles of agency, and that Holt Hauling and Holt Marine were either additional undisclosed principals or were beneficiaries of Kirno Hill's performance of the charter party and were therefore liable under an unjust enrichment theory. Kirno Hill did not sue Waterside-Pennsylvania, which Holt had incorporated on August 11, 1975, for the business of chartering vessels.

The district court found that in July 1975 Holt engaged Pendleton, whose Waterside-New York is in the business of securing shipping principals, to find a vessel for charter to carry cargo. Pendleton found the Selene, negotiated its charter, and on August 22 signed the charter party. However, Waterside-New York forwarded to Waterside-Pennsylvania the communications from Kirno Hill that set forth the balances due under the charter party, and Waterside-Pennsylvania made the payments. Waterside-Pennsylvania received payments made for the carriage of goods aboard the Selene. Also, Waterside-Pennsylvania obtained financing from The First Pennsylvania Bank for the express purpose of chartering vessels, and in October paid $12,243.75 to Waterside-New York in commissions.

As to Holt Hauling and Holt Marine, which are in the business of trucking, stevedoring, and warehousing cargoes intended for foreign shipment, the district court found that Holt used their credit to guarantee the loans made to Waterside-Pennsylvania, that the companies shared common offices with Waterside-Pennsylvania, and that they received cash advances from Waterside-Pennsylvania. Kirno Hill did not, however, establish the occasion or

---

1. Kirno Hill invoked the district court's admiralty jurisdiction. 28 U.S.C. § 1333. A contract for the hire of a vessel is within admiralty jurisdiction. *Kossick v. United Fruit Co.*, 365 U.S. 731, 735, 81 S.Ct. 886, 889, 6 L.Ed.2d 56 (1961); *Morewood v. Enequist*, 64 U.S. (23 How.) 491, 16 L.Ed. 516 (1860).

terms of those advances. The district court also found that Kirno Hill did not know of the existence of Holt, Holt Hauling, or Holt Marine, when it signed the charter party.

Neither Holt nor Kirno Hill disputes the district court's findings. Holt disputes only the court's conclusion that "the evidence overwhelmingly establishes that in fact Thomas Holt was the charterer of the vessel, M. S. Selene, and that Waterside-New York acted as his agent in that transaction, all of which was unknown to the plaintiff." Kirno Hill disputes the ·court's conclusion that the evidence fails to show that Holt Hauling or Holt Marine were principals in the charter or benefited in such a way as to make them liable in equity.

■ We reverse the district court's imposition of personal liability upon Holt. Federal maritime law, which is the law we apply in an admiralty case, *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628, 79 S.Ct. 406, 408, 3 L.Ed.2d 550 (1959), embraces the principles of agency, *Interocean Shipping Co. v. National Shipping and Trading Co.*, 523 F.2d 527, 537 (2d Cir. 1975), *cert. denied*, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976), including the doctrine that an undisclosed principal is bound by the contracts made on his account by an agent acting within his authority. *Restatement of Agency*, Second, § 186; *Navieros Oceanikos v. S. T. Mobil Trader*, 554 F.2d 43, 48 n.3 (2d Cir. 1977). However, the evidence adduced in the district court's opinion does not support the conclusion that Waterside-New York's undisclosed principal was Holt. It was Waterside-Pennsylvania that obtained financing for the purpose of chartering vessels, that made the charter-hire payments, that paid the other expenses in connection with chartering, outfitting, and operating the Selene, and that received payments for the carriage of goods on the Selene. There is no evidence that Holt engaged in chartering the Selene in any manner but through Waterside-Pennsylvania.

Two sentences in the district court's opinion suggest that the court pierced Waterside-Pennsylvania's corporate veil in order to hold Holt personally liable to Kirno Hill. Specifically, the court said, "Holt's incorporation of Waterside-Pennsylvania was a facade. Waterside-Pennsylvania was his alter ego." Assuming that Kirno Hill advanced this theory of liability at the trial,[2] the evidence does not support it.

■ The prerequisites for piercing a corporate veil are as clear in federal maritime law as in shoreside law: Holt must have used Waterside-Pennsylvania to perpetrate a fraud or have so dominated and disregarded Waterside-Pennsylvania's corporate form that Waterside-Pennsylvania primarily transacted Holt's personal business rather than its own corporate business. *Gartner v. Snyder*, 607 F.2d 582, 586 (2d Cir. 1979); *Interocean Shipping Co. v. National Shipping and Trading Co., supra*, 523 F.2d at 539. That Holt is the sole owner of Waterside-Pennsylvania does not alone justify piercing the corporate veil, *Williams v. McAllister Bros., Inc.*, 534 F.2d 19, 21 (2d Cir. 1976); indeed, individuals may incorporate for the very purpose of avoiding personal liability. *Gartner v. Snyder, supra*, 607 F.2d at 586.

There is no evidence in the record to support a conclusion that Holt used Waterside-Pennsylvania for a fraudulent end. Also, because Holt incorporated Waterside-Pennsylvania on August 11, 1975, before the fix of the Selene on August 22, Waterside-Pennsylvania in chartering the Selene was conducting its own corporate business, not Holt's personal business. We therefore reverse that portion of the judgment that holds Holt personally liable to Kirno Hill.

■ We affirm, however, the district court's judgment that Holt Hauling and Holt Marine are not liable to Kirno Hill. The evidence does not show that either company had a stake in chartering the Sel-

**2.** Holt argues that Kirno Hill never alleged or argued at trial that Waterside-Pennsylvania's corporate veil should be pierced, and that therefore he may not be held liable upon that theory. But we have discussed this argument because the district court apparently gave some weight to that theory in reaching its conclusions.

ene. Neither Holt Hauling nor Holt Marine owned any shares in or exercised any control over Waterside-Pennsylvania. The mere fact that they guaranteed Waterside-Pennsylvania's loan, at Holt's direction, does not suffice to show that they were principals in the chartering. Furthermore, they are not liable under an equity theory, for Kirno Hill, not knowing of them when it executed the charter party, did not rely upon them, and, not having shown the nature or disposition of the advances from Waterside-Pennsylvania to Holt Hauling or Holt Marine, it has not shown that either was unjustly enriched.

Affirmed in part and reversed in part.