**In the Matter of the Arbitration between
HOLBORN OIL TRADING LTD.,
Petitioner,**

**and**

**INTERPETROL BERMUDA
LTD., Respondent.**

No. 86 Civ. 8244 (PKL).

United States District Court,
S.D. New York.

Oct. 1, 1991.

Law Offices of Philip J. Curtin, P.C., New York City (Philip J. Curtin, of counsel), for plaintiff-intervenor.

Greenspoon, Gaynin, Daichman & Marino, New York City (Jeffrey H. Daichman, of counsel), for defendant-respondent.

## OPINION AND ORDER

LEISURE, District Judge.

In this admiralty action, plaintiff-intervenor Sanko Steamship Co. Ltd. ("Sanko")

seeks to recover a judgment against Intertanker Ltd. ("Intertanker") by piercing the corporate veil between Intertanker and its parent corporation, Interpetrol Bermuda Ltd. ("Interpetrol").[1] Interpetrol has moved for summary judgment under Fed. R.Civ.P. 56, claiming that there exist no issues of material fact on Sanko's claims, and that Interpetrol is entitled to judgment as a matter of law. For the following reasons, Interpetrol's motion is denied.

## BACKGROUND

On October 25, 1981, Sanko, a Japanese corporation, chartered its vessel, the "Judith Prosperity," to Intertanker a Bermuda corporation. The charter was the result of negotiations between Sanko and Intertanker's New York agent, Interpetrol USA, Inc. Pursuant to the charter, the Judith Prosperity transported crude oil from the United States to Korea; freight charges of $474,000 due under the charterparty were paid to Sanko on September 25, 1981, and discharge operations were completed on September 29, 1981.[2]

Sanko made a claim for demurrage on December 15, 1981 that subsequently was submitted to arbitration. In March 1983 Sanko was awarded a judgment against Intertanker on its demurrage claim for $148,672.79 plus interest; thereafter, the award was confirmed by order of Judge Robert J. Ward. *See Sanko Steamship Co. v. Intertanker Ltd.*, 83 Civ. 7640 (S.D.N.Y. March 9, 1983). However, Intertanker was placed into liquidation in Bermuda in September 1985, and Sanko has been unable to recover in the liquidation proceeding. Sanko therefore has sought another way to satisfy its judgment, turning its attention to Interpetrol, which plaintiff claims completely dominates its subsidiary, Intertanker. Sanko therefore seeks to pierce the corporate veil between Interpe-

trol and Intertanker, and recover directly from Interpetrol.

Accordingly, on April 1, 1987, Sanko was granted permission by Judge Shirley W. Kram to intervene in an otherwise unrelated proceeding to confirm an arbitration award in favor of Interpetrol. *See Holborn Oil Trading Ltd. v. Interpetrol Bermuda Ltd.*, 658 F.Supp. 1205 (S.D.N.Y.1987). Judge Kram found that Sanko's allegations of domination and fraud and its intent of recovering directly from Interpetrol gave it a direct interest in the proceeding to confirm the arbitration between Interpetrol and Holborn. *See id.* at 1208-09. She therefore granted Sanko's motion to intervene as of right under Fed. R.Civ.P. 24(a)(2). Interpetrol's recovery against Holborn was deposited into Court under Fed.R.Civ.P. 67, and it is these funds that Sanko now seeks to recover.

Pursuant to this Court's Memorandum Order of March 5, 1990, Sanko filed its Amended Intervenor's Complaint against Interpetrol. Sanko's complaint states three causes of action, alleging fraud, domination and financial manipulations that Sanko claims make it a creditor of Interpetrol. This Court, however, believes that the three separately stated claims actually converge into one cause of action: Sanko is alleging that Interpetrol dominated and controlled Intertanker, that Intertanker was Interpetrol's alter ego and that this arrangement worked a fraud on Sanko. Sanko therefore asks this Court to pierce the corporate veil, allowing it to recover its judgment against Intertanker directly from Interpetrol. This reading of the Complaint is supported by the Memorandum on Behalf of Plaintiff–Intervenor, The Sanko Steamship Co. Ltd. In Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Response"). Sanko explains that "[t]he fraud here was the fraud of Interpetrol by dint of its complete domina-

1. Throughout this opinion, plaintiff-intervenor Sanko is referred to interchangeably as "plaintiff" or "Sanko." Respondent Interpetrol is referred to as "defendant" or "Interpetrol."

2. The parties dispute who owned and made payment for the freight. Defendant claims that

Intercarbon Bermuda, Ltd. ("Intercarbon") owned the crude oil and paid for transportation. Plaintiff disputes the claim of ownership for two reasons: Intercarbon is only listed on bills relating to the shipment as the "party notify," and payment was made by order of "Intercarbon N.V."—not Intercarbon.

tion and control of Intertanker." Plaintiff's Response, at 31. Sanko also recognizes that the "Court has the power to enforce its own judgments by any equitable means." Plaintiff's Response, at 33. Thus, plaintiff's claim that it is a creditor of Interpetrol goes to the remedy Sanko seeks: piercing of the corporate veil between Interpetrol and Intertanker and recovery of its judgment directly from Interpetrol. In response to plaintiff's complaint, defendant moves for summary judgment, and it is this motion that is currently before the Court.

While the facts leading up to the voyage of the Judith Prosperity are relatively clear, the parties are in sharp dispute over the facts at issue in the instant proceeding. Defendant claims that "Interpetrol had absolutely nothing to do with the underlying transaction which gave rise to Sanko's claim." Defendant's Memorandum In Support of Motion for Summary Judgment ("Defendant's Motion"), at 1. Plaintiff responds with a litany of facts that it contends show the existence of disputed issues of fact with respect to Interpetrol's control of Intertanker. Though the specific evidence presented by Sanko is examined in closer detail below, the Court pauses to recount some of the Sanko's allegations. Sanko begins by asserting that there has been confusion of corporate names and identities. It next alleges that Interpetrol and Intertanker shared common offices, facilities, officers and directors. In fact, Sanko alleges that, as of the date of the charterparty, Intertanker had no functioning board of directors, but instead was completely dominated and controlled by Interpetrol. Sanko further alleges that contracts entered into by Intertanker were executed on behalf of Interpetrol, which paid freight charges. Finally, plaintiff contends that questionable financial dealings occurred between Interpetrol and Intertanker, culminating in Interpetrol's stripping Intertanker's assets, rendering Intertanker judgment proof.

## DISCUSSION

### I. Standard for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "Summary judgment is appropriate if, 'after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party.'" *United States v. All Right, Title & Interest in Real Property, etc.*, 901 F.2d 288, 290 (2d Cir.1990) (quoting *Murray v. National Broadcasting Co.*, 844 F.2d 988, 992 (2d Cir.), *cert. denied*, 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988)). Summary judgment may be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The substantive law governing the case will identify the facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there does indeed exist a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2510; *see also R.C. Bigelow, Inc. v. Unilever N.V.*, 867 F.2d 102, 107 (2d Cir.), *cert. denied*, 493 U.S. 815, 110 S.Ct. 64, 107 L.Ed.2d 31 (1989). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying which materials it believes "demonstrate the absence of a genuine issue of material fact." *Celotex, supra*, 477 U.S. at 323, 106 S.Ct. at 2552. "[T]he burden on the moving party may be discharged by 'showing'— that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Cel-*

*otex, supra,* 477 U.S. at 325, 106 S.Ct. at 2553; *see Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991).

Once a motion for summary judgment is properly made, the burden then shifts to the nonmoving party, which " 'must set forth specific facts showing that there is a genuine issue for trial.' " *Anderson, supra,* 477 U.S. at 250, 106 S.Ct. at 2511 (quoting Fed.R.Civ.P. 56(e)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson, supra,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10. "Conclusory allegations will not suffice to create a genuine issue. There must be more than a 'scintilla of evidence,' and more than 'some metaphysical doubt as to the material facts.' " *Delaware & Hudson Ry. v. Consolidated Rail Corp.,* 902 F.2d 174, 178 (2d Cir.1990) (quoting *Anderson, supra,* 477 U.S. at 252, 106 S.Ct. at 2512, and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986)), cert. denied, — U.S. —, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991). "The non-movant cannot 'escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts,' or defeat the motion through 'mere speculation or conjecture.' " *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (quoting *Borthwick v. First Georgetown Sec., Inc.,* 892 F.2d 178, 181 (2d Cir.1989) and *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987)).

## II. Piercing the Corporate Veil

### A. *Choice of the Applicable Law*

At the outset, this Court must determine what law governs Sanko's attempt to pierce the corporate veil between Interpetrol and Intertanker. Where the parties assume that forum law applies, their implied consent concludes the choice of law inquiry. *See Tehran–Berkeley Civil and Envtl. Engineers v. Tippetts–Abbett–McCarthy–Stratton,* 888 F.2d 239, 242 (2d Cir.1989). Here, however, the parties do not agree on the proper choice of law. Defendant's Motion relies on New York law, as interpreted by the Second Circuit sitting in diversity. *See, e.g., American Protein Corp. v. AB Volvo,* 844 F.2d 56 (2d Cir.), cert. denied, 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988); *Gorrill v. Icelandair/Flugleidir,* 761 F.2d 847 (2d Cir.1985).[3] In contrast, plaintiff contests the applicability of New York law because this Court is sitting in admiralty rather than diversity. *See* Plaintiff's Response, at 20–21.

Plaintiff is correct in its assertion that this Court is sitting in admiralty and that federal common law governs the cause of action. The judgment upon which Sanko is suing was entered under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq,* but the Arbitration Act does not provide an independent basis of subject matter jurisdiction; rather, it requires an independent basis of jurisdiction. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983); *Harry Hoffman Printing, Inc. v. Graphic Communications, Int'l Union, Local 261,* 912 F.2d 608 (2d Cir.1990). The cause of action underlying the arbitration award here is recovery for demurrage; this action sounds in admiralty, and provides the jurisdictional basis for the parties' presence before this Court. *See Ocean Transp. Line, Inc. v. American Philippine Fiber Indus., Inc.,* 743 F.2d 85, 88 (2d Cir.1984).

---

**3.** Defendant also relies on this Court's decisions in *Oriental Commercial and Shipping Co. v. Rosseel, N.V.,* 702 F.Supp. 1005 (S.D.N.Y.1988) ("Oriental II") and *Oriental Commercial and Shipping Co. v. Rosseel, N.V.,* 609 F.Supp. 75 (S.D.N.Y.1985) ("Oriental I"). The *Oriental* decisions involved arbitration clauses whose enforceability was governed by federal statute and common law. *See Oriental I,* 609 F.Supp. at 78. However, the substantive law applied in these cases was New York State law. *See Oriental II,* 702 F.Supp. at 1014 n. 4 ("[T]he parties appear to agree, and the Court therefore assumes, that New York law is applicable to the substantive issues raised at trial.").

■ Federal courts sitting in admiralty must apply federal common law when examining corporate identity.[4] *See Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 342 (2d Cir.1986); *Kirno Hill Corp. v. Holt*, 618 F.2d 982 (2d Cir.1980); *Maritime Ventures Int'l, Inc. v. Caribbean Trading & Fidelity, Ltd.*, 689 F.Supp. 1340, 1348 (S.D.N.Y.1988); *see also Talen's Landing, Inc. v. M/V Venture II*, 656 F.2d 1157 (5th Cir.1981). Although the district court can import "principles of state law which it finds both persuasive and appropriate to subsume," *Bergesen d.y. A/S v. Lindholm*, 760 F.Supp. 976, 986 (D.Conn.1991) (Thomas, Mag. J.), it is federal common law that controls. Federal common law in the Second Circuit involves a two pronged test for piercing the corporate veil: the party sought to be charged must have used its alter ego "to perpetrate a fraud or have so dominated and disregarded [its alter ego's] corporate form" that the alter ego was actually carrying on the controlling party's business instead of its own. *Kirno Hill Corp., supra,* 618 F.2d at 985; *accord Dow Chemical Pacific, Ltd, supra,* 782 F.2d at 342; *see also Bergesen, supra,* 760 F.Supp. at 986 (providing 15 factor federal common law test for piercing corporate veil in admiralty).

■ This Court next turns briefly to examine New York law concerning piercing the corporate veil, a subject recently revisited by the Second Circuit in *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 137–39 (2d Cir.1991). To pierce the corporate veil in New York, a plaintiff must show that, at the time of the transaction, the parent (1) "exercised such control that the subsidiary 'has become a mere instrumentality' of the parent, which is the real actor; (2) such control has been used to commit fraud or other wrong; and (3) the fraud or wrong results in an unjust loss or injury to plaintiff." *Id.* at 138 (quoting *Lowendahl v. Baltimore & Ohio R.R. Co.*, 247 A.D. 144, 157, 287 N.Y.S. 62 (1st Dep't), *aff'd*, 272

N.Y. 360, 6 N.E.2d 56 (1936)). New York law also provides for piercing the veil when a corporate entity is completely controlled by another and has no separate will of its own. *See Passalacqua Builders, supra,* 933 F.2d at 138; *see also Berkey v. Third Avenue Ry. Co.*, 244 N.Y. 84, 95, 155 N.E. 58 (1926) ("Dominion may be so complete, interference so obtrusive, that by the general rules of agency the parent will be a principal and the subsidiary an agent.... [This occurs] where the attempted separation between parent and subsidiary will work a fraud upon the law.") (Cardozo, J.).

In light of the preceding discussion, the Court disagrees with defendant's reliance on *American Protein* in support of the proposition that piercing the veil requires a showing of both domination and fraud. It is true that this Court adopted this formulation of the legal standard in *Oriental II, supra,* 702 F.Supp. at 1019. However, in *Passalacqua Builders* the Second Circuit rejected the position that a plaintiff must show both domination *and* fraud to successfully pierce the veil under New York law. Rather, "[l]iability ... must be predicated upon a showing of fraud *or* upon complete control by the dominating corporation that leads to wrong against the parties." *Passalacqua Builders, supra,* 933 F.2d at 138 (emphasis added).

A comparison of the standards for piercing the veil under New York and federal common law thus reveals that the two standards converge, requiring a showing of either fraud or domination. This Court will therefore look to the 10 factors enumerated by the Second Circuit in *Passalacqua Builders* to determine whether there exists a genuine issue of material fact concerning piercing the corporate veil:

(1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence ..., (2) inadequate capitalization, (3) whether funds are put in and taken out of the corpora-

---

**4.** This Court clearly has the power to pierce the corporate veil when sitting in admiralty. *See Swift & Company Packers v. Compania Colombiana Del Caribe, S.A.*, 339 U.S. 684, 689 n. 4, 70 S.Ct. 861, 865 n. 4, 94 L.Ed. 1206 (1950) ("The jurisdiction of a court of admiralty to determine the question of alter ego is undoubted.").

tion for [other] than corporate purposes, (4) overlap in ownership, officers, directors and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.[5]

*Id.* at 139.

This Court does agree with defendant's assertion that the alleged domination or fraud asserted as the basis for piercing the veil must have occurred at the same time as the transaction that is complained of. *See Passalacqua Builders, supra,* 933 F.2d at 138; *American Protein, supra,* 844 F.2d at 60. However, the Court rejects defendant's attempt to impose a mechanistic standard on the fact-intensive inquiry required to determine if the corporate veil must be pierced. *See* Defendant's Motion, at 12 ("Sanko must show that Interpetrol exercised such domination and control over Intertanker in entering into *that* charterparty") (emphasis added); Defendant's Reply Memorandum, at 21 (Sanko must "show that Interpetrol Bermuda gave instructions or directions to Intertanker concerning the Sanko charterparty"). As clearly indicated in *Passalacqua Builders,* the inquiry for piercing the corporate veil examines the full spectrum of the relations between the parent corporation and its alleged alter ego. The true criteria that guide the finder of fact in deciding whether to pierce the veil include disregard of corporate formalities, overlap of operations, financial manipulations and absence of arms length dealing. Although there is a "presumption of separateness between a corporation and its owners" that is not lightly overcome,

*American Protein, supra,* 844 F.2d at 60, this Court declines the invitation to restrict controlling precedent on defendant's behalf.

### B. *Merits of Defendant's Summary Judgment Motion*

■ With the substantive law in mind, this Court now turns to defendant's summary judgment motion. Defendant contends that it had no involvement with the Sanko–Intertanker charterparty. *See* Defendant's Motion, at 1. It points to an absence of dealings between Interpetrol and Sanko, and asserts that plaintiff did not look to or know of Interpetrol in entering the charterparty with Intertanker. *See id.* at 16–17. Defendant asserts that this absence of knowledge about Interpetrol is reflected in the Deposition of Clifford C. Jagoe, Sanko's Executive Vice–President, taken on June 19, 1990. Interpetrol focuses at length on Sanko's inability to show reliance on Interpetrol because Sanko had a lien on the cargo of crude oil carried by the Judith Prosperity to cover demurrage. Interpetrol concludes by asserting that Sanko assumed the ordinary risk of contracting: "that the other party to the contract might end up in bankruptcy." *American Protein, supra,* 844 F.2d at 64. Examining these contentions, the Court finds that Interpetrol has met its burden of pointing out to the Court the basis for its motion and identifying why it believes there exist no genuine issues of material fact.

The burden thus shifts to Sanko, which begins by citing evidence indicating confusion of corporate identities. For example, in the Intertanker–Sanko charterparty "Interpetro Bermuda" [sic] is the radio call name provided. *See* Affidavit of Jeffrey H. Daichman, Esq., sworn to on March 28, 1991 ("Daichman Affidavit") Exhibit ("Ex.") D, clause 31. Sanko's internal fixture memorandum, dated August 25, 1981, lists the charterer of the Judith Prosperity as "Intertanker Ltd. of Hamilton (Interpetrol)." *See* Affidavit of Clifford C. Jagoe,

---

**5.** This factor analysis is virtually identical to the 15 factor analysis for piercing the corporate veil in admiralty enumerated by Magistrate Judge Smith in *Bergesen, supra,* 760 F.Supp. at 987.

sworn to on April 17, 1991, Ex. 1. There is confusion concerning the true owner of the cargo, which is variously listed as Intercarbon Bermuda and Intercarbon N.V. *Compare* Daichman Affidavit, Ex. H (bank letter authorizing payment for freight) *with* Jagoe Affidavit, Ex. 2 (bills of lading). John Hardy, Interpetrol's former accountant, has stated that "the same personnel who were one day trading in the name of Interpetrol Bermuda, Ltd. were then trading in the name of Intercarbon Bermuda, Ltd." *See* Affidavit of Philip J. Curtin, Esq., sworn to on April 25, 1991 ("Curtin Affidavit"), Ex. D, at 30. Further, Henri Lehner, the president and general manager of Interpetrol, referred to Intertanker and Interpetrol jointly as the "Interpetrol Group." *See* Curtin Affidavit, Ex. A, at 4.

Sanko next provides evidence of overlapping operations and management at Interpetrol and Intertanker. For example, Ranate Murdock–Muirhead, a director of both Interpetrol and Intertanker, testified that the corporations had interlocking directorships and shared offices and facilities; she further states that Intertanker had no employees of its own. *See* Curtin Affidavit, Ex. G, at 8–12. Sanko also claims that during the period in question Intertanker had no corporate control independent of Interpetrol, a claim supported by the Murdock–Muirhead testimony concerning resignations from and absence of any meetings of Intertanker's board of directors. *See id.* at 13–14.

Evidence of the absence of arms length dealing and Interpetrol's use of Intertanker for its own benefit is also presented. It appears from Sanko's evidence that Intertanker's only role was to act as a booking agent for Interpetrol. "Intertanker was the charging agent for Interpetrol.... [T]he charterparty would be issued in Intertanker's name and Intertanker would earn a small commission for that activity, and that's as far as I know all the activity that Intertanker did." Curtin Affidavit, Ex. G, at 13 (statement of Ranate Murdock–Muirhead). There is also evidence of interrelated finances. John Hardy testified that commissions earned by Intertanker were kept by Interpetrol. *See* Curtin Affidavit, Ex. D at 26 (statement of John Hardy, former accountant for Interpetrol). He also testified that about three quarters of a million dollars in cash was transferred from Intertanker to Interpetrol, and that Interpetrol owed Intertanker $1,531,169.70. *See id.* at 28. In the words of John Hardy, "[f]rom the way the bookkeeping was set up, Interpetrol and Intertanker were effectively one and the same." *Id.* at 32. In addition to this evidence that Interpetrol stripped Intertanker's assets, there is evidence that Interpetrol's books were altered to obscure the alleged transfers. As John Hardy stated, "Intertanker Limited has been deprived of its only source of income—thus making it impossible to pay the claims that had been transferred to its responsibility." Curtin Affidavit, Ex. F at 23 (Second Statement of John Hardy).

In response to this evidence, Interpetrol raises many counter-arguments. Interpetrol claims that the depositions of Sanko executives demonstrate that Sanko had no knowledge of any relationship between Intertanker and Interpetrol. It contends that Intertanker had independent governance and a bona fide business purpose and existence. Interpetrol contests the allegations of questionable financial manipulations, and questions the credibility and motivation of John Hardy, its former accountant. Finally, Interpetrol points to Sanko's lack of independent discovery effort in the case, complaining that Sanko has failed to act in a timely manner throughout the litigation.

However, on a summary judgment motion, the role of the Court is not to weigh credibility or the competing inferences that can be drawn from the evidence, but rather to see if there exists an issue of fact that must be submitted to the jury. *See Anderson, supra,* 477 U.S. at 249, 106 S.Ct. at 2510. Applying this standard to the evidence marshalled by Sanko in its attempt to pierce the corporate veil, it is clear that plaintiff has presented sufficient specific evidence to require submission of its case to the finder of fact. Therefore, defendant's summary judgment motion is denied.

■ Turning to plaintiff's fraud allegations, the Court notes that common law intentional fraud involves a misrepresentation by the defendant that was false and known to be false, that was intended to and did cause reliance to plaintiff's detriment. *See Murray v. Xerox Corp.*, 811 F.2d 118, 121 (2d Cir.1987) (applying New York law); *Black Gold Marine, Inc. v. Jackson Marine Co.*, 759 F.2d 466, 470 (5th Cir.1985) (applying federal common law of fraud when sitting in admiralty). Sanko admits that Interpetrol made no representations to it with respect to or following the charterparty. *See* Statement of Plaintiff Intervenor Pursuant to Rule 3(g) ¶ 10. If plaintiff were asserting a claim for common law fraud, summary judgment in defendant's favor would be granted.

However, as discussed *supra*, plaintiff's claims of fraud actually serve to support the action for piercing the corporate veil, and do not state a separate cause of action. It is clear that "proof of a stripping of the assets of the subsidiary by the parent, motivated by a desire to render the subsidiary judgment proof, would constitute a 'fraud or wrong' " justifying piercing of the corporate veil. *Carte Blanche (Singapore) Pte., Ltd. v. Diners Club Int'l, Inc.*, 758 F.Supp. 908, 917 (S.D.N.Y.1991) (Leisure, J.); *cf. Kommanditselskab Supertrans v. O.C.C. Shipping, Inc.*, 79 Bankr. 534, 541 (S.D.N.Y.1987) (finding admiralty jurisdiction because "plaintiff seeks to enforce an admiralty judgment, argues that corporate defendants are the alter ego of the judgment debtor, and suggests an ongoing scheme to transfer assets fraudulently in an attempt to defraud creditors"). So considered, Sanko's allegations of fraud are part and parcel of the attempt to pierce the corporate veil and are supported by substantial evidence. Therefore, summary judgment on the fraud claim is denied.

■ The Court next addresses two final grounds upon which defendant seeks summary judgment. First, defendant asserts that it is not subject to personal jurisdiction in the instant action because Sanko failed to serve its Amended Complaint on Interpetrol itself. However, this argument must fail. Defendant admits that service was made on its attorney. *See* Defendant's Motion, at 27. Further, when intervention is as of right under Rule 24(a), "service in accordance with Rule 5(b) on the attorneys for those parties who have appeared is sufficient." 7C Wright, Miller & Kane, *Federal Practice and Procedure* § 1919 (2d ed. 1986); *Berman v. Herrick*, 30 F.R.D. 9, 12–13 (E.D.Pa.1962). Summary judgment on ground of lack of personal jurisdiction is therefore denied.

■ Defendant also claims that Sanko's cause of action to recover on the judgment is time-barred by the six year statute of limitations that applies to actions for fraud. However, if plaintiffs can prove their alter ego theory, "the previous judgment is then being enforced against entities who were, in essence, parties to the underlying dispute; the *alter egos* are treated as one entity," and the statute of limitations defense disappears. *Passalacqua Builders, supra*, 933 F.2d at 142. Furthermore, an action to pierce the corporate veil is most closely analogous to an action to recover on a judgment, which bears a twenty year statute of limitations under New York law. *See Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 608 F.Supp. 1261, 1264 (S.D.N.Y.1985); N.Y.C.P.L.R. § 211(b). Therefore, summary judgment on the statute of limitations ground is denied.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is denied.

SO ORDERED.