**ARCTIC OCEAN INTERNATIONAL, LTD., Plaintiff,**

**v.**

**HIGH SEAS SHIPPING LTD., United International Trading, Global Logistics Group Ltd., & Transult Services, a.k.a. Transult Services Reg'd or Transult Enr, Defendants.**

No. 06 Civ. 1056 (LAP).

United States District Court, S.D. New York.

March 30, 2009.

Kevin John Lennon, Lennon, Murphy & Lennon, LLC, New York, NY, for Plaintiff.

Armand Philip Mele, Junge & Mele, LLP, New York, NY, Richard Joseph Reisert, Clark, Atcheson & Reisert, North Bergen, NJ, for Defendant.

## MEMORANDUM AND ORDER

LORETTA A. PRESKA, District Judge.

Plaintiff Arctic Ocean International, Ltd.[1] ("Plaintiff") filed this maritime and admiralty claim alleging breach of a charter agreement. Plaintiff has obtained an Amended *Ex Parte* Order for Process of Maritime Attachment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Feder-

---

1. Curiously, both parties refer to Plaintiff in their papers as "Artic." While the discrepancy between Plaintiff's captioned name and the parties' own use of the same is unexplained, this Memorandum remains faithful to the caption.

al Rules of Civil Procedure authorizing it to attach Defendants' funds as security for a potentially favorable ruling in an ongoing London arbitration between Plaintiff and Defendant High Seas Shipping Ltd. ("HSS").

Defendant Transult Services ("Transult") now moves to dismiss the Complaint against it under Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of personal jurisdiction and failure to state a claim. A ruling in Transult's favor would require vacating the attachment order as it pertains to Transult. For the reasons discussed below, Transult's motion is GRANTED, and the attachment order is vacated with regard to Transult.[2]

## I. BACKGROUND

### A. Factual Allegations

Plaintiff is a foreign company organized and operating under the laws of Russia and the disponent owner of the M/V CHELYABINSK (the "Vessel"). (Compl. ¶¶ 2, 3.) Defendant HSS is also a foreign corporation, with its principal place of business in the Marshall Islands. (Id. ¶ 4.) On April 12, 2005, Plaintiff chartered the Vessel to HSS by way of a time charter party. (Id. ¶ 8.) Plaintiff's claims arise out of HSS's alleged failure to remit adequate charter payment for the Vessel and wrongful termination of the charter party. (Id. ¶ 9.) The charter party mandates that disputes arising from the contract will be settled under English law; London arbitration is currently ongoing.[3] (Id. ¶ 10.)

Transult, a business registered in Quebec and existing by virtue of foreign law, is the personal consultancy of Mr. John Pragelas ("Pragelas"). (Id. ¶¶ 7, 31; Transult Mem., at 3.) The Complaint alleges, inter alia, that Transult is a mere shell corporation acting as a pass through entity and paying agent for HSS with the "sole purpose of ... hinder[ing], delay[ing] or defraud[ing] creditors of Defendant HSS" and, as such, Transult is the alter ego of HSS or vice versa. (See Compl. ¶¶ 2–18.) Plaintiff's alter ego claims concerning Transult stem from an August 2003 freight payment made to Plaintiff on HSS's behalf via Defendant United International Trad-

---

**2.** In addition to the parties' notices of the instant motion and Plaintiff's Second Amended Verified Complaint ("Compl." or the "Complaint"), the Court has considered the following submissions in reaching its decision: Defendant Transult's Memorandum of Law in Support of the Motion to Dismiss the Complaint Pursuant to Fed.R.Civ.P. 12(b)(2) & (6) and to Vacate the Rule B Ex Parte Order for Process of Maritime Attachment ("Transult Mem."); Plaintiff's Memorandum of Law in Opposition to Defendant Transult's Motion to Dismiss and/or Vacate Maritime Attachment ("Pl. Mem."); Defendant Transult's Reply Memorandum of Law in Support of the Motion to Dismiss the Complaint Pursuant to Fed.R.Civ.P. 12(b)(2) & (6) and to Vacate the Rule B Ex Parte Order for Process of Maritime Attachment; and other submissions included in the documents listed above. Additionally, since part of Transult's grounds for relief relate to jurisdictional concerns, the Court has considered the following declara- tions in deciding Transult's 12(b)(2) motion: Declaration of John Pragelas, sworn to July 2, 2008 ("Pragelas Decl."); Declaration of Kevin J. Lennon in Opposition to Defendant Transult's Motion to Dismiss and/or Vacate Maritime Attachment, sworn to July 25, 2008 ("Lennon Decl.").

**3.** Transult contends that the underlying arbitration has "essentially [lain] dormant for over two years," (Transult Mem., at 3), due to the fact that HSS "has not proceeded with the London arbitration and has not conducted any action with respect to that proceeding in over two years." (Transult Mem., at 12.) HSS asserts that it is still "diligently pursing [sic] its claim in London" and that "[a]ny perceived delay is due to the foreign counsel's efforts to prepare the claim." (Pl. Mem., at 19.) In any event, it is clear that the underlying dispute is subject to arbitration in London, regardless of whatever track it is currently following.

ing ("UIT"). (*Id.* ¶¶ 27, 36.) The payment was sent "c/o Transult Services Reg'd" and listed Pragelas's wife's Montreal address.[4] (*Id.* ¶ 37.) Plaintiff does not dispute that Transult was not a signatory to the charter party and is not currently involved in the London arbitration. (Transult Mem., at 3.)

## B. *Procedural History*

On February 10, 2006, Plaintiff's corporate parent, Far East Shipping Company, PLC ("FESCO"), commenced this action by filing a verified complaint against HSS and HSS's ship broker, Altomar Maritime Inc. ("AMI"). [Dkt. No. 1.] That same day, this Court issued an *Ex Parte* Order for Process of Maritime Attachment against HSS and Altomar. [Dkt. No. 4.] FESCO subsequently amended its Complaint, and this Court issued a new attachment order on February 15, 2006. [Dkt. Nos. 5, 6.] On March 17, 2006, Plaintiff was substituted for FESCO, and AMI was voluntarily dismissed from the case. [Dkt. Nos. 12, 13.]

In a letter dated April 17, 2008, Plaintiff requested leave to file the currently operative Complaint adding Transult, UIT, and Global Logistics Group Ltd. ("Global") as defendants. (*See* Pl. Mem. Ex. D.) This Court granted Plaintiff's request in an order dated April 23, 2008 [dkt. No. 24.], and Plaintiff filed the Complaint on April 25, 2008. [Dkt. No. 27.] That same day, this Court issued an Amended *Ex Parte* Order for Process of Maritime Attachment against all defendants. [Dkt. Nos. 25, 27.] Transult now moves to dismiss the Complaint and vacate the attachment.

## II. *DISCUSSION*

### A. *Rule B Maritime Attachments*

 Transult ultimately seeks to vacate this Court's April 25, 2008 Amended *Ex Parte* Order for Process of Maritime Attachment insofar as it pertains to Transult. "The power to grant maritime attachments in admiralty is an inherent component of the admiralty jurisdiction given to the federal courts under Article III of the Constitution." *Transportes Navieros y Terrestes, S.A. de D.V. v. Fairmount Heavy Transp. N.V.*, No. 07 Civ. 3076, 2007 WL 1989309, at *3 (S.D.N.Y. July 6, 2007) (citing *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty*, 460 F.3d 434, 437 (2d Cir. 2006)). Rule B maritime attachments serve the dual purpose of obtaining personal jurisdiction over an absent defendant and securing collateral for a potential judgment in plaintiff's favor. *Aqua Stoli*, 460 F.3d at 437; *accord Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263, 268 (2d Cir.2002). Because, historically, maritime parties are peripatetic and often have transitory assets, "the traditional policy underlying maritime attachment has been to permit the attachments of assets wherever they can be found and not to require the plaintiff to scour the globe to find a proper forum for suit or property of the defendant sufficient to satisfy a judgment." *Aqua Stoli*, 460 F.3d at 443.

 To secure a Rule B maritime attachment, a plaintiff must: (1) satisfy the service requirements of Rules B and E, (2) show that the defendant cannot be found within the district but that the defendant's property may be so located, (3) demonstrate that there is no statutory or maritime legal bar to the attachment, and (4)

---

4. Pragelas admits that the address listed on the 2003 payment was his "then home" in Montreal. (Pragelas Decl. ¶ 12.) Pragelas offers the following explanation for why his home address appeared on a payment remitted by UIT: "In August 2003 I operated Transult from my Montreal home, and since UIT's director, Yoav Cohen, traveled extensively, he used my home address as a place to receive mail, including bank documents." (*Id.* ¶ 12.)

establish that it has a valid *prima facie* admiralty claim against the defendant. *Id.* at 445. While the Court of Appeals has not exhaustively identified all the possible grounds for vacating a Rule B maritime attachment, it has made clear that vacatur should occur only under limited circumstances. *Id.* For example, if a defendant can show that it is subject to suit in a convenient adjacent jurisdiction or that the plaintiff could obtain *in personam* jurisdiction over the defendant in the plaintiff's home district, vacatur is appropriate. *See id.* (noting an additional ground for vacatur where the plaintiff has already obtained sufficient security for a potential judgment).

Rule E(4)(f) provides that "[w]henever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with [the Federal Rules of Civil Procedure]." Fed. R.Civ.P. Supp. R. E(4)(f). When such a hearing is requested, the plaintiff then bears the burden of proving that the attachment was properly ordered. *See Aqua Stoli*, 460 F.3d at 445 n. 5. The Advisory Committee Notes for the 1985 Amendment to Supplemental Rule E(4)(f) indicate that a defendant may "attack the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings" when requesting vacatur of an attachment.

Transult never sought a Rule E(4)(f) hearing to contest the attachment order. Instead, Transult moves to dismiss the Complaint with the ultimate goal of vacating the attachment order against it. The reason Transult has not requested a Rule E(4)(f) hearing is plain: no property has been attached in the eleven months that the attachment order has been in force.

While this Court notes that a motion to vacate an attachment and a motion to dismiss a complaint are not the same, *Tide Line, Inc. v. Eastrade Commodities, Inc.*, No. 06 Civ. 1979, 2007 A.M.C. 252, 260–61, 2006 U.S. Dist. LEXIS 95870, at *22 (S.D.N.Y. Aug. 15, 2006), Transult's grounds for making its motion to dismiss under Rules 12(b)(2) and 12(b)(6) equally attack the adequacy of the attachment order. Therefore, even though Transult's arguments are addressed in the motion to dismiss context, they would have similar force at a Rule E(4)(f) hearing.

### B. *Defendant's Motion to Dismiss the Complaint under Rules 12(b)(2) and 12(b)(6)*

#### 1. *Rule 12(b)(2)*

■ Transult's first ground for dismissing the Complaint is that this Court lacks personal jurisdiction over it. "The jurisdiction conferred by a maritime attachment is characterized as *quasi in rem*." *Winter Storm*, 310 F.3d at 268. "[T]he quasi-in-rem characteristic of maritime attachment . . . requires the presence of some item of property of the defendant in the hands of the garnishee as a basis for jurisdiction over the defendant's interest in that property." *Ythan Ltd. v. Ams. Bulk Transp. Ltd.*, 336 F.Supp.2d 305, 307 (S.D.N.Y.2004). Transult contends that *quasi in rem* jurisdiction is lacking because Plaintiff has thus far failed to attach any of its funds pursuant to the April 25, 2008 attachment order. Plaintiff, on the other hand, insists that the appropriate inquiry is whether there are reasonable grounds for believing that Transult's funds will soon be present within this district. In support of this contention, Plaintiff points to a June 27, 2008 electronic funds transfer ("EFT") by Transult that passed through the hands of garnishee banks HSBC and Bank of America. (*See* Lennon

Decl., ¶ 6.) Plaintiff, however, voluntarily released these funds.[5]

■ The Court of Appeals has ruled that EFTs that originate from defendants subject to Rule B maritime attachments and which pass through New York banks qualify as attachable property. *See Consub Del. LLC v. Schahin Engenharia Limitada*, 543 F.3d 104, 108–13 (2d Cir. 2008); *Winter Storm*, 310 F.3d at 274–78. While the property to be attached must be in the garnishee's hands at the time the attachment order is served upon the garnishee so as to properly effectuate process of the attachment, *Reibor Int'l Ltd. v. Cargo Carriers (KACZ–CO) Ltd.*, 759 F.2d 262, 266 (2d Cir.1985), Rule B is silent on whether the property to be attached must be within the relevant district *at the time the attachment order is issued.* Rule B similarly makes no mention of what standard of proof is required of a plaintiff in demonstrating that a defendant's funds can be found within the district. *See Marco Polo Shipping Co. v. Supakit Prods. Co.*, No. 08 Civ. 10940, 2009 WL 562254, at *1 (S.D.N.Y. Mar. 4, 2009). *Winter Storm* suggests that as long as a plaintiff can make a reasonable showing that the defendant's funds will soon come into the district, attachment is warranted. *See Winter Storm*, 310 F.3d at 266–67, 273; *Rizzo–Bottiglieri de Carlini Armatori S.P.A. v. Indus. Carriers, Inc.*, No. 08 Civ. 8391, 2008 WL 4615854, at *1 n. 7 (S.D.N.Y. Oct. 14, 2008) ("[A] Rule B [attachment] order may be issued in anticipation of funds coming into the District at some unknown future time."). However, the case law provides little guidance on the question of how much time must elapse without any funds being attached before *quasi in rem* juris-

diction is so obviously lacking that an attachment should be vacated and the underlying complaint dismissed.

Although not directly on point, this Court's decision in *Blueye Navigation, Inc. v. Oltenia Navigation, Inc.*, Nos. 94 Civ. 1500, 94 Civ. 2653, 1995 WL 66654 (S.D.N.Y. Feb. 17, 1995), is instructive. In that case, this Court declined to order a Rule B maritime attachment due to plaintiffs' inability to locate any of defendants' funds within this district for almost a year. *Id.* at *4–6. Because plaintiffs alleged *quasi in rem* jurisdiction as the only grounds for personal jurisdiction over the defendants, this Court dismissed the complaint, noting that:

> [N]o *quasi in rem* jurisdiction under Rule B can exist without some *res* to be attached. In fact, for Rule B attachment to be appropriate, it is clear that the property must be located within the district and the property must belong to the defendant.... If, as in this case, no property was attached in the first instance, then no jurisdiction was ever obtained under Supplemental Rule B.

*Id.* at *4 (citations omitted). The presence of some *res* in the district as a requisite for attaining jurisdiction over Rule B defendants comports with historic perceptions of maritime attachment procedures: "The process by attachment may issue, wherever the defendant has concealed himself or absconded from the country, *and the goods to be attached are within the jurisdiction of the admiralty.*" *Manro v. Almeida*, 23 U.S. (10 Wheat.) 473, 475, 6 L.Ed. 369 (1825) (emphasis added); *see also Atkins v. Disintegrating Co.*, 85 U.S. (18 Wall.) 272, 292, 21 L.Ed. 841 (1873) ("[T]he jurisdiction and power to attach property to

---

**5.** The amount of the EFT was $1,000. In light of this *de minimis* amount and the indication that the payment was intended as a remittance for Transult's attorneys' fees,

Plaintiff's counsel ordered that the funds be released to defense counsel. (Lennon Decl., ¶ 7.)

compel an appearance ... exists in this country, where the defendant is ... an alien not found within the district, but ha[s] property there which can be attached." (internal quotation marks omitted)).

The fact that Rule B attachment orders are increasingly being issued subject to expiration dates also suggests that there is a temporal limit to when property must be attached. In *Marco Polo,* for example, Judge Koeltl issued a Rule B attachment valid for only sixty days—if no property was attached within that period, the attachment order would automatically expire unless plaintiff established good cause for an extension. 2009 WL 562254, at *1. After the sixty-day window expired without any property being attached, Judge Koeltl dismissed the complaint, finding that "the requirement that the defendant's property be found in the district" had not been satisfied. *Id.* at *2. Plaintiff's allegation that defendant's funds *might* come into the district at some point because defendant transacted some of its business in United States dollars, an allegation that Arctic makes here as well, was rejected as inadequate grounds for extending the attachment order:

> [P]laintiff appears to take the position that any likelihood short of impossibility that the defendant's funds could be restrained in the future is sufficient to meet the requirement that the defendant's property be found within the district. However, in almost every case, there will be a "viable potential" that a defendant may transfer funds through a New York bank, and requiring so little to be shown for an attachment to issue renders the third requirement of *Aqua Stoli* almost meaningless. It is plain that a plaintiff must at least set forth enough facts to render it plausible that the defendant's funds will be present in the district at some future time.

*Id.* The same analysis should be applied to the instant case. While this Court did not initially issue the attachment order against Transult subject to an expiration date, I find that eleven months of unsuccessful attempts at locating Transult's funds within this district renders *quasi in rem* jurisdiction wanting and that dismissal of the Complaint and vacatur of the attachment as to Transult is warranted.

Alternatively, even if it had personal jurisdiction over Transult, this Court would dismiss the Complaint because Plaintiff's alter ego claims are insufficient to withstand Transult's 12(b)(6) motion.

### 2. *Rule 12(b)(6)*

#### a. *Standard of Review*

On a motion to dismiss for failure to state a claim, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Johnson v. Newburgh Enlarged Sch. Dist.,* 239 F.3d 246, 250 (2d Cir.2001). However, to withstand such a motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Generally, although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations omitted) (alteration in original). In the Rule B maritime attachment context, however, plaintiffs must additionally satisfy Rule E(2)(a)'s heightened pleading standard, which requires a complaint to "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a

more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Fed.R.Civ.P. Supp. R. E(2)(a). This requirement is more demanding than Rule 8's pleading standard and is intended to prevent a plaintiff from "hold[ing], for a substantial period of time, property to which, in reality, it has no legitimate claim." *United States v. Premises & Real Prop.*, 889 F.2d 1258, 1266 (2d Cir.1989) (quotation marks omitted).

### b. *Analysis*

■ Transult bases its 12(b)(6) motion on the ground that Plaintiff has insufficiently pleaded its alter ego claim. Allegations of alter ego liability address the final requirement of Rule B maritime attachments—that the plaintiff show it has a legitimate *prima facie* admiralty claim against the defendant. *See Brave Bulk Transp. v. Spot On Shipping Ltd.*, No. 07 Civ. 4546, 2007 WL 3255823, at *3 (S.D.N.Y. Oct. 30, 2007). There is no question that Plaintiff's claim against HSS—failure to remit charter party payment—is maritime in nature. However, the sole basis for extending this claim to Transult is the allegation that Transult is an alter ego of HSS. Thus, to survive this motion, the Complaint must allege particular facts supporting its alter ego theory of liability to satisfy Rule E(2)(a)'s heightened pleading standard.

■ "Under the doctrine of limited liability, a corporate entity is liable for the acts of a separate, related entity only under extraordinary circumstances, commonly referred to as piercing the corporate veil." *Dolco Invs., Ltd. v. Moonriver Dev., Ltd.*, 486 F.Supp.2d 261, 271 (S.D.N.Y.

2007) (internal quotation marks omitted). When examining corporate identity, federal courts sitting in admiralty have tended to apply federal maritime common law, *In re Holborn Oil Trading Ltd.*, 774 F.Supp. 840, 844 (S.D.N.Y.1991), which in this Circuit provides two alternative means for piercing the corporate veil: "the party sought to be charged must have used its alter ego 'to perpetrate a fraud *or* have so dominated and disregarded [its alter ego's] corporate form' that the alter ego was actually carrying on the controlling party's business instead of its own." *Id.* (emphasis added) (quoting *Kirno Hill Corp. v. Holt*, 618 F.2d 982, 985 (2d Cir.1980)); *see also N. Tankers (Cyprus) Ltd. v. Backstrom*, 967 F.Supp. 1391, 1398–99 (D.Conn. 1997).

■ Plaintiff does not allege a fraud claim against Transult; instead, Plaintiff argues an alter ego theory of liability.[6] When considering whether to pierce a corporate veil based on allegations of alter ego liability, courts may consider the following factors:

(1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the domi-

---

**6.** There is only one mention of fraud in the Complaint: "Upon information and belief, the sole purpose of Defendants UIT, Global and/or Transult is to hold or transfer monies on behalf of HSS, so as to hinder, delay or defraud creditors of Defendant HSS."

(Compl. ¶ 12.) This vague, conclusory reference to a potential fraud claim deserves little attention, as Plaintiff's own Opposition papers make clear that its alter ego claims are the sole ground for piercing Transult's corporate veil.

nating entity, and (10) intermingling of property between the entities.

*Freeman v. Complex Computing Co.,* 119 F.3d 1044, 1053 (2d Cir.1997); *Dolco Invs.,* 486 F.Supp.2d at 271–72; *see also Williamson v. Recovery Ltd. P'ship,* 542 F.3d 43, 53 (2d Cir.2008) (noting that "the general principle guiding courts in determining whether to pierce the corporate veil 'has been that liability is imposed when doing so would achieve an equitable result' " (quoting *William Wrigley Jr. Co. v. Waters,* 890 F.2d 594, 601 (2d Cir.1989))). Rule E(2)(a)'s heightened pleading standard therefore requires Plaintiff to allege sufficient facts relating to the above factors which, if true, would support a finding that Transult is HSS's alter ego. *See Dolco Invs.,* 486 F.Supp.2d at 272 ("To survive a motion to dismiss, [the plaintiff] 'need ... allege sufficient *facts* to support an inference that [the co-defendant] has so dominated and disregarded [the primary defendant's] form' that [the co-defendant is in fact an alter ego]." (emphasis added) (quoting *Wajilam Exps. (Singapore) Pte. Ltd. v. ATL Shipping Ltd.,* 475 F.Supp.2d 275, 282 (S.D.N.Y.2006))).

However, Plaintiff makes only conclusory allegations with respect to Transult to support its alter ego theory of liability. These allegations, based upon "information and belief," include the following:

UIT, Global and/or Transult are merely a shell—corporations [sic] through which HSS conducts its business.... UIT, Global and/or Transult have no separate, independent identities from HSS.... HSS is the alter ego of UIT, Global and/or Transult because HSS dominates and disregards the corporate form of UIT, Global and/or Transult to the extent that HSS is actually carrying on the business and operations of UIT, Global and/or Transult as if the same were its own and vice versa.... UIT, Global and/or Transult act as paying agents, or arrange for other non-parties to satisfy the debts and obligations of Defendant HSS.... HSS uses UIT, Global and/or Transult as "pass through" entities such that it can insulate itself from creditors relating to its charters.... [Transult's] Pragelas has ties to High Seas Shipping, UIT and Global, and upon information and belief, he dominates and controls all of them.

(Compl., ¶¶ 14–18, 35.) "[L]egal conclusions couched as factual allegations are not facts and cannot substitute for facts." *Cornell v. Assicurazioni Generali S.p.A.,* No. 97 Civ. 2262, 2000 WL 1099844, at *1 (S.D.N.Y. Aug. 7, 2000); *see also Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (noting that courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). The majority of Plaintiff's allegations regarding Transult are little more than "labels and conclusions" that reflect "formulaic recitation[s] of the elements of a cause of action." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955.

The sole factual allegation supporting Plaintiff's alter ego claim against Transult is that one freight payment made to Plaintiff by UIT on HSS's behalf contained the language "United International Trading c/o Transult Services Reg'd" listed under Pragelas's home address. (*See* Compl. ¶¶ 26, 36–37.) While this transaction might indicate that a paying agent relationship existed, Transult is not implicated as part of that relationship. Rather, the allegation suggests only that such a relationship existed between *UIT* and HSS. Nor does the payment suggest that Transult and UIT, Global or HSS share the same office space, address or telephone number. Furthermore, while the Complaint asserts that "[c]ommingling of funds, cross-collateralization of loans, and

fail[ure] to do business at arms' length are all badges of alter-ego" (Compl. ¶ 33), Plaintiff fails to attach these characteristics to any of Transult's actions. Plaintiff's declaration that Pragelas "seems to have his hands in every pie" (Pl. Mem., at 16) does not relieve Plaintiff of its obligation to plead facts specific to Transult that raise an inference of Transult's alter ego liability.

Courts faced with similar insufficiently pleaded alter ego claims as Plaintiff's have granted motions to dismiss. *See, e.g., Dolco Invs.*, 486 F.Supp.2d at 272–73 (granting co-defendant's motion to dismiss due to plaintiff's insufficient, conclusory allegations of alter ego liability where complaint alleged that co-defendant paid primary defendant's debts "from time to time"); *cf. Williamson*, 542 F.3d at 53 (affirming district court's vacatur of a Rule B attachment order as to certain defendants when plaintiffs' alter ego claims were supported "merely by generalized assertions in the attorney-verified complaint" (internal quotation marks omitted)). Conversely, when a complaint alleges facts with greater specificity that support claims of alter ego liability, courts have denied motions to dismiss. *See, e.g., T & O Shipping, Ltd. v. Source Link Co.*, No. 06 Civ. 7724, 2006 WL 3513638, at *7–8 (S.D.N.Y. Dec. 5, 2006) (denying motion to dismiss when the complaint alleged that co-defendant company's correspondence bore the name of the primary defendant company and both companies shared the same ownership, office space and fax number); *cf. C. Transp. Panamax, Ltd. v. Kremikovtzi Trade E.O.O.D.*, No. 07 Civ. 0893, 2008 WL 2546180, at *4 (S.D.N.Y. June 19, 2008) (denying motion to vacate Rule B attachment where amended complaint sufficiently pleaded alter ego liability based on allegations that co-defendant (1) shared eight directors with and completely owned primary defendant company, (2) maintained parallel internet presence with primary defendant, and (3) made settlement payment on primary defendant's behalf). I find that in the instant case, Plaintiff's sole factual allegation in support of its alter ego claims against Transult is insufficient to support its theory of liability, and warrants the same disposition as those cases that granted motions to dismiss on similarly and inadequately pleaded allegations of alter ego liability.

In sum, Plaintiff's Rule B Complaint fails to meet Rule E(2)(a)'s heightened pleading standard. While the Complaint might sufficiently allege alter ego claims with respect to UIT and Global, it fails adequately to plead the same when it comes to Transult. Plaintiff's conclusory allegations of domination and control are simply insufficient to withstand Transult's 12(b)(6) motion:

> Were a plaintiff to be permitted to rely on such [conclusory] allegations to [maintain] an attachment against an entity that is not a party to a contract sued on, the already thinly stretched remedy of maritime attachment could disrupt the commercial activities of entities whose links to the real defendant in interest are tenuous [i]f non-existent.

*Brave Bulk Transp.*, 2007 WL 3255823, at *6.

## III. CONCLUSION

For the foregoing reasons, the Motion to Dismiss [dkt. No. 33] is GRANTED, and the attachment order is vacated with regard to Transult.

SO ORDERED.